**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

| | |
|---|---|
| Rafael Hernandez, individually and on behalf of all others similarly situated, | |
| Plaintiff, | |
| - against - | Class Action Complaint |
| HP Inc., | Jury Trial Demanded |
| Defendant | |

Plaintiff alleges upon information and belief, except for allegations about Plaintiff, which are based on personal knowledge:

1. HP Inc. ("Defendant") manufactures, markets, and/or sells the HP Pavilion 15 Series of laptop computers under the HP brand with lithium-ion (Li-ion) batteries ("Product").

2. A laptop's battery is its most important feature, allowing use of the computer without a power source.

3. Lithium-ion batteries have six main components – two electrodes, two current collectors, an electrolyte, and a separator.

4. The two electrodes, anode and cathode, are usually made of graphite, carbon and or lithium metal oxide.

5. The electrodes are electronically insulated from each other by a separator, soaked in an organic electrolyte.

6. The current collectors are usually copper and aluminum.

7. When the battery is discharged, the anode is oxidized, and lithium ions are deintercalated from the anode, traveling through the electrolyte, and intercalate into the cathode.

8. When the battery is charged, the cathode is oxidized, and the lithium ions move from

the cathode to the anode.

9. A laptop user expects its battery to adequately function for the lifespan the laptop, and not suffer rapid degradation and failure.

10. Lithium-ion battery defects include premature failure, high C-rate (electrical current drain rate), swelling and overheating, which are not always attributed to normal degradation.

11. Testing methods for batteries are limited to electrochemical characterization, focusing on macroscopic battery performance, including impedance and capacity measurements.[1]

12. These tests overlook failure precursors and defects introduced during manufacturing, including raw electrode material processing, cell grading and battery pack assembling.

13. Battery manufacturing defects contribute to reliability and performance issues, including low states of charge and unexpected shutdowns.

14. Structural cell defects from manufacturing can lead to acute failure, chronic degradation, inferior electrochemical performance and overheating.

15. During the electrode preparation process, non-uniform coating of the electrode on current collector, pinhole defects, and blisters/agglomerates can be generated, causing performance-related defects, leading to substandard capacity, increased impedance, higher degradation rate, and reduced useful life.

16. Electrode overhang will lead to dendrite growth and eventual short-circuits.

17. A mild tab burr could occur if the welding is not exact, which can become hazardous during prolonged battery use.

18. Defects in the separator include holes, inferior puncture strength, and clogged pores, causing local lithium plating, leading to reduction of battery capacity by consuming active lithium.

---

[1] These include IEEE Standard 1625.

19. Morphological defects in producing batteries include non-uniform active particle packing in the electrode when particles with distinct sizes coexist, significantly affecting the battery's lifespan.

20. Though material impurities and contaminants introduced during manufacturing may not cause failure, they can provoke catastrophic cell damage during cycling and can affect the battery's resistance, reducing its usable lifespan.

21. As the C-rate increases, the elevated temperature increases decomposition of electrolyte, leading to the more rapid consumption of active lithium, and reduction in cathode performance.

22. Current battery testing standards fail to test finished batteries at higher C-rates that are consistent with expected operational usage conditions.

23. By failing to utilize available testing procedures to focus on the above issues, users have a greater chance of buying laptops with battery performance issues, unconnected to their usage patterns.

24. By selling its laptops, Defendant represents that their component parts are adequate for usage and will function reliably for a reasonable period of time.

25. The value of the Product that Plaintiff purchased was materially less than its value as represented by Defendant.

26. The Product is sold at a premium price, approximately no less than $300, excluding tax and sales, higher than similar products, sold and represented in a non-misleading way, and higher than it would be sold for if consumers were aware it was prone to these defects.

Jurisdiction and Venue

27. Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C.

§ 1332(d)(2).

28. The aggregate amount in controversy exceeds $5 million, including any statutory and punitive damages, exclusive of interest and costs.

29. Plaintiff is a citizen of Florida.

30. Defendant is citizen of Delaware and California.

31. The class of persons Plaintiff seeks to represent includes persons who are citizens of different states from which Defendant is a citizen.

32. The members of the class Plaintiff seeks to represent are more than 100, because the Product has been sold in thousands of locations, including big box stores, warehouse club stores, stores, and online, across the States covered by Plaintiff's proposed classes.

33. Venue is in this District with assignment to the Miami Division because Plaintiff resides in Miami-Dade County and a substantial part of the events and omissions giving rise to these claims occurred here, including Plaintiff's purchase of the Product and awareness its sale was misleading and deceptive because of the issues described here.

## Parties

34. Plaintiff Rafael Hernandez is a citizen of Miami, Florida, Miami-Dade County.

35. Defendant HP Inc. is a Delaware corporation with a principal place of business in Pasadena, California, Los Angeles County.

36. Defendant sells laptop computers through its website and via third-party websites and physical stores.

37. Plaintiff purchased the Product within the statutes of limitations for each cause of action alleged, on Walmart.com, in or around November 2020.

38. Plaintiff bought the Product because he expected its components such as its battery,

4

would be adequately manufactured, designed and tested so that it could reliably hold its charge and not drain rapidly after short periods unconnected to an external power source.

39. Plaintiff relied on the sale of the Product, words, terms coloring, descriptions, layout, placement, packaging, tags, and/or images on the Product, on the labeling, statements, omissions, claims, and instructions, made by Defendant or at its directions, in digital, print and/or social media, which accompanied the Product and separately, through in-store, digital, audio, and print marketing.

40. Plaintiff bought the Product at or exceeding the above-referenced price.

41. Plaintiff expected that the sale of the Product meant its components were adequately tested to ensure performance and functioning under normal use conditions.

42. The battery in Plaintiff's laptop suffered premature failure and degradation after only several months of normal usage, whereby it was incapable of obtaining and maintaining its charge for any reasonable period of time, preventing and limiting his ability to use it.

43. Plaintiff and consumers paid more for the Product than they would have had they known the batteries were only subjected to electrochemical characterization tests, focusing on macroscopic battery performance, instead of the occurrence of other defects which could and did cause battery failures.

44. Plaintiff intends to, seeks to, and will purchase the Product again when he can do so with the assurance its components are adequately tested to ensure normal operation and usage.

45. Plaintiff is unable to rely on the labeling of not only this Product, but other battery-powered products because he is unsure of whether their representations are truthful.

## Class Allegations

46. Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following classes:

> **Florida Class:** All persons in the State of Florida who purchased the Product during the statutes of limitations for each cause of action alleged.
>
> **Consumer Fraud Multi-State Class**: All persons in the States of Georgia, South Carolina, New Mexico, Alaska, Iowa, Tennessee, and Virginia who purchased the Product during the statutes of limitations for each cause of action alleged.

47. Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

48. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

49. Plaintiff is an adequate representative because his interests do not conflict with other members.

50. No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

51. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

52. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

53. Plaintiff seeks class-wide injunctive relief because the practices continue.

## Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, *et seq.*

54. Plaintiff incorporates by reference all preceding paragraphs.

55. Plaintiff relied on the Product's sale, representations and omissions, to believe its components were adequately tested to ensure performance and functioning under normal use conditions.

56. Plaintiff and class members were damaged by paying more for the Product than they would have if they knew the present facts.

<u>Violation of State Consumer Fraud Acts</u>
<u>(Consumer Fraud Multi-State Class)</u>

57. The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class are similar to the consumer protection statute invoked by Plaintiff and prohibit the use of unfair or deceptive practices.

58. The members of the Consumer Fraud Multi-State Class were harmed in the same way as Plaintiff, and may assert their consumer protection claims under the Consumer Fraud Acts of their States and/or the consumer protection statute invoked by Plaintiff.

<u>Breaches of Express Warranty,</u>
<u>Implied Warranty of Merchantability/Fitness for a Particular Purpose and</u>
<u>Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.</u>

59. The Product was manufactured, identified, marketed, and sold by Defendant and expressly and impliedly warranted to Plaintiff and class members that its components were adequately tested to ensure performance and functioning under normal use conditions.

60. Defendant directly marketed the Product to Plaintiff through its advertisements and marketing, through various forms of media, on the packaging, in print circulars, direct mail, product descriptions distributed to resellers, and targeted digital advertising, as a product that did not contain inadequately tested components.

61. Defendant knew the product attributes that potential customers like Plaintiff were seeking, such as products which were reliable and were tested to detect failure points, and

developed its marketing and labeling to directly meet those needs and desires.

62. Defendant's representations about the Product were conveyed in writing and promised it would be defect-free, and Plaintiff understood this meant that its battery would not prematurely fail or degrade under normal usage.

63. The representations were conveyed in writing through the sale of the Product and promised it would be defect-free, and Plaintiff understood this meant that its battery would not prematurely fail or degrade under normal usage.

64. Defendant described the Product so Plaintiff believed that its battery would not prematurely fail or degrade under normal usage, which became part of the basis of the bargain that it would conform to its affirmations and promises.

65. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product, i.e., that its most important component was not tested in a manner designed to identify the above failure points.

66. This duty is based on Defendant's outsized role in the market for this type of product, custodian of the HP brand.

67. Plaintiff recently became aware of Defendant's breach of the Product's warranties.

68. Plaintiff provides or will provide notice to Defendant, its agents, representatives, retailers, and their employees that it breached the Product's express and implied warranties.

69. Defendant received notice and should have been aware of these issues due to complaints by third-parties, including regulators, competitors, and consumers, to its main offices, and by consumers through online forums.

70. The Product did not conform to its affirmations of fact and promises.

71. The Product was not merchantable because it was not fit to pass in the trade as

advertised, not fit for the ordinary purpose for which it was intended and did not conform to the promises or affirmations of fact made on the packaging, container, or label, because it was marketed and sold as if its components such as its battery, would be adequately manufactured, designed and tested so that it could reliably hold its charge and not drain rapidly after short periods unconnected to an external power source.

72. The Product was not merchantable because Defendant had reason to know the particular purpose for which the Product was bought by Plaintiff, because he expected its components such as its battery, would be adequately manufactured, designed and tested so that it could reliably hold its charge and not drain rapidly after short periods unconnected to an external power source, and relied on Defendant's skill and judgment to select or furnish such a suitable product.

## Negligent Misrepresentation

73. Defendant had a duty to truthfully represent the Product, which it breached.

74. This duty was non-delegable, based on Defendant's position, holding itself out as having special knowledge and experience as a trusted brand known for high quality computers.

75. The representations and omissions went beyond the specific sale and representations, and incorporated the extra-labeling promises and commitments to quality Defendant has been known for.

76. These promises were outside the standard representations other companies may make in an arms-length, retail context.

77. The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in Defendant.

78. Plaintiff reasonably and justifiably relied on these negligent misrepresentations and

omissions, which served to induce and did induce, his purchase of the Product.

## Fraud

79. Defendant misrepresented and/or omitted the attributes and qualities of the Product, and expected its components such as its battery, would be adequately manufactured, designed and tested so that it could reliably hold its charge and not drain rapidly after short periods unconnected to an external power source.

80. Defendant was aware, based on internal studies, that consumer preferences for laptops rated a reliable battery as the top feature they look for.

## Unjust Enrichment

81. Defendant obtained benefits and monies because the Product was not as represented, sold and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

## Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the class;
2. Injunctive relief to remove, correct and/or refrain from the challenged practices;
3. Awarding monetary, statutory and/or punitive damages and interest;
4. Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and
5. Other and further relief as the Court deems just and proper.

Dated:   October 25, 2022

Respectfully submitted,

          /s/ William Wright
The Wright Law Office, P.A.
515 N Flagler Dr Ste P-300
West Palm Beach FL 33401
(561) 514-0904
willwright@wrightlawoffice.com

Sheehan & Associates, P.C.
Spencer Sheehan (*Pro Hac Vice* forthcoming)
60 Cuttermill Rd Ste 412
Great Neck NY 11021
(516) 268-7080
spencer@spencersheehan.com